Filed 4/27/23  P. v. J.R. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>J.R.,<br><br>        Defendant and Appellant. | F084654<br><br>(Super. Ct. No. 17JL-00137C)<br><br><br>**OPINION** |

---

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County.  Jennifer O. Trimble, Judge.

Karriem Baker, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kimberley A. Donohue and Craig S. Meyers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]        Before Levy, Acting P. J., Smith, J. and Snauffer, J.

## INTRODUCTION

In 2019, a juvenile wardship petition was filed alleging that appellant J.R., a minor at the time, had committed various felonies, including a gang-related murder. In 2021, an amended petition was filed. It was alleged that appellant had participated in this gang-related murder, and a principal had personally and intentionally discharged a firearm that caused the victim's death.

In July 2022, the district attorney successfully moved the juvenile court to transfer appellant to the superior court to be tried as an adult. The juvenile court granted the transfer based on a preponderance of the evidence standard.

In the present appeal, respondent concedes that the order must be reversed. We agree. Effective January 1, 2023, the Legislature enacted Assembly Bill No. 2361 (2021-2022 Reg. Sess.) (Stats. 2022, ch. 330, § 1). This law retroactively requires the transfer of a minor from juvenile court to a criminal court to be based on "clear and convincing evidence that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (Welf. & Inst. Code, § 707, subd. (a)(3).) [1] Consequently, we reverse the juvenile court's order and remand for a new fitness hearing.[2]

## BACKGROUND

We briefly summarize the alleged facts surrounding this murder. We also summarize the juvenile court's ruling.

---

[1]    All future statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2]    We need not address appellant's other claim that the juvenile court allegedly abused its discretion because its findings lacked sufficient evidence. In light of the change in law, a new record must be developed with different findings based on a higher standard of proof. (§ 707, subd. (a)(3); see also *In re S.S.* (2023) 89 Cal.App.5th 1277, 1281 [declining to address an insufficiency of evidence claim due to the need to remand for further proceedings in light of Assembly Bill No. 2361].)

## I.     The Murder.

The victim was found deceased with a gunshot wound to his torso. It is alleged[3] that, on the night in question, appellant and other males were drinking alcohol. Appellant got into a verbal disagreement with the victim, and appellant wanted to fight the victim. The victim ran away. Appellant and approximately three other males gave chase.

The males chased the victim both on foot and with a van. At some point, appellant was driving the van. According to appellant, one of the other males shot the victim. Appellant informed a detective that, although he took part in chasing the victim, he never intended the victim's death.

Evidence suggests that appellant and other males involved in this murder were gang members. A gang expert opined at the fitness hearing that this murder was committed in furtherance of a street gang. It is alleged that appellant took part in this murder about 23 days before he turned 18 years old.

## II.    The Juvenile Court's Ruling.

After the wardship petition was filed, the parties conducted a contested hearing regarding appellant's suitability to be transferred to the superior court. The juvenile court considered the following five factors set forth in section 707, subdivision (a)(3)(A)-(E):

(1)     The degree of criminal sophistication exhibited by appellant;

(2)     Whether appellant can be rehabilitated prior to the expiration of the juvenile court's jurisdiction;

(3)     Appellant's previous delinquent history;

(4)     The success of previous juvenile court attempts to rehabilitate appellant; and

(5)     The gravity of the present offense.

---

[3]     The facts surrounding this incident have not been proven beyond a reasonable doubt.

The court found factors both for and against transfer.[4] For example, the court found that appellant had suffered childhood neglect, abuse, and trauma. A psychologist had diagnosed appellant with persistent depressive disorder, severe conduct disorder, and moderate cannabis and alcohol use disorder. On the night in question, appellant's mother had encouraged appellant's criminal involvement. Evidence suggested that appellant's mother had provided the gun to either appellant or someone else within his group on the night in question. Appellant's prior delinquency record was "fairly minimal." In addition, appellant was on probation at the time of this incident. However, the court concluded that the prior attempts to rehabilitate appellant had not been exhaustive or intensive, which weighed against a transfer.

In contrast, however, the court found that appellant had been involved in a "gang lifestyle." Although the evidence was in conflict, some evidence suggested that appellant had given the order to get a gun on the night in question. The court also expressed concern that not enough time remained for rehabilitation to occur until the juvenile jurisdiction expired when appellant turned 25 years old. Finally, the court noted that, when this murder had occurred, the victim had attempted to retreat. Appellant had been driving the van used to chase down the victim, and the gunman had been in the passenger seat next to him.

After weighing all of the factors, the juvenile court granted the transfer motion. The court stated that the prosecution had shown by a preponderance of the evidence that appellant should be transferred to the jurisdiction of the criminal court.

---

**4** Appellant contends that some of the juvenile court's findings lack evidentiary support or were based on the court's own speculation. We need not address those concerns. Instead, this matter must be remanded for a new fitness hearing in compliance with the retroactive change in law.

4.

When this juvenile fitness hearing occurred in July 2022, the prosecution bore the burden to establish by a preponderance of the evidence that appellant should be transferred to criminal court. (Cal. Rules of Court, rule 5.770(a); *In re E.P.* (2023) 89 Cal.App.5th 409, 415.) However, in September 2022, the Governor signed Assembly Bill No. 2361. Effective January 1, 2023, this bill amended section 707 to require a juvenile court to apply a higher standard of proof in a fitness hearing. Under the current law, a juvenile court may transfer a minor to criminal court if it makes a finding by "clear and convincing evidence that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (§ 707, subd. (a)(3).) Thus, Assembly Bill No. 2361 imposed two changes before a juvenile court may transfer a minor to adult court: (1) it raised the standard of proof and (2) it required a new specific finding regarding amenability to rehabilitation. (*In re S.S.*, *supra*, 89 Cal.App.5th at p. 1284.)

"The standard of proof known as clear and convincing evidence demands a degree of certainty greater than that involved with the preponderance standard, but less than what is required by the standard of proof beyond a reasonable doubt. This intermediate standard 'requires a finding of high probability.' " (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 998.) This elevated standard of proof also affects the type and quality of the evidence that must be presented by the prosecution, which bears this increased burden. One appellate court has noted that, given the new focus on whether a minor is amenable to rehabilitation, expert testimony will likely be necessary for a complete analysis at a fitness hearing. (*In re S.S.*, *supra*, 89 Cal.App.5th at p. 1286.)

Respondent concedes that Assembly Bill No. 2361 retroactively applies in this matter. We agree. Absent evidence to the contrary, we must assume that an amended statute that mitigates the possible punishment for a class of persons is presumptively retroactive and applies to all persons whose judgments were not yet final at the time the statute took effect. (*People v. Frahs* (2020) 9 Cal.5th 618, 624.) In *People v. Superior*

*Court (Lara)* (2018) 4 Cal.5th 299 (*Lara*), our high court held that Proposition 57,[5] which prohibited charging juveniles directly in criminal court, applied retroactively to nonfinal judgments. (*Lara*, *supra*, at pp. 303–304.) The *Lara* court reasoned that "[t]he possibility of being treated as a juvenile in juvenile court—where rehabilitation is the goal—rather than being tried and sentenced as an adult can result in dramatically different and more lenient treatment." (*Id.* at p. 303.)

We agree with the parties that, similar to Proposition 57, Assembly Bill No. 2361 represents an ameliorative change because it increased the burden of proof necessary to transfer appellant to criminal court. Moreover, this amendment requires a specific finding from the juvenile court that appellant is not amenable to rehabilitation. (§ 707, subd. (a)(3).) Appellant would receive a very different outcome if he remained under the jurisdiction of the juvenile court rather than being tried and sentenced as an adult. Accordingly, an inference of retroactivity applies. Because nothing in Assembly Bill No. 2361 rebuts this inference, this amendment retroactively applies to appellant, whose appeal is not yet final. Consequently, we reverse the juvenile court's order and remand this matter for the juvenile court to conduct a new juvenile fitness hearing.

The People bear the burden of establishing by clear and convincing evidence that appellant "is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (§ 707, subd. (a)(3).) "If the court orders a transfer of jurisdiction, the court shall recite the basis for its decision in an order entered upon the minutes, which shall include the reasons supporting the court's finding that [appellant] is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (*Ibid.*) We express no opinion regarding how the juvenile court should rule when this matter is remanded.

---

[5]     Proposition 57 is the Public Safety and Rehabilitation Act of 2016. (*Lara*, *supra*, 4 Cal.5th at p. 303.)

## DISPOSITION

The juvenile court's order transferring appellant to a court of criminal jurisdiction is reversed.  This matter is remanded to the juvenile court for it to conduct a fitness hearing pursuant to section 707, as amended by Assembly Bill No. 2361.